## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | |
|---|---|
| **CHRIS CURLEY**<br>2159 Blackthorn<br>Toledo, Ohio 43614<br><br>   **Plaintiff,**<br><br>vs.<br><br>**LUCAS COUNTY SHERIFF'S OFFICE**<br>1622 Spielbusch Avenue<br>Toledo, Ohio 43604<br><br>   **Defendant.** | **CASE NO.:**<br><br>**Judge**<br><br>**COMPLAINT WITH JURY DEMAND**<br><br>**Widman & Franklin, LLC**<br>**John D. Franklin (0055359)**<br>**Diana M. Robinson (0086642)**<br>**Kera L. Paoff (0082674)**<br>**405 Madison Ave., Suite 1550**<br>**Toledo, Ohio 43604**<br>**Ph.: (419) 243-9005**<br>**Fax: (419) 243-9404**<br>**john@wflawfirm.com**<br>**diana@wflawfirm.com**<br>**kera@wflawfirm.com**<br><br>**Attorneys for Plaintiff,**<br>**Chris Curley** |

  Now comes Plaintiff, Chris Curley, complaining of Defendant, Lucas County Sheriff's Office, and alleges as follows:

### **PARTIES**

 1. Plaintiff, Chris Curley ("Curley"), is an individual citizen of the State of Ohio, residing in the City of Toledo, County of Lucas.

 2. Defendant, Lucas County Sheriff's Office ("Defendant"), is a political subdivision of the State of Ohio, governmental entity and/or public agency.

**JURISDICTION AND VENUE**

3. This suit is authorized and instituted pursuant to the Family and Medical Leave Act ("FMLA") of 1993, 29 U.S.C. §§2601 et seq., providing for relief from termination or change in employment status based on a necessity for the employee to take a leave of absence due to her own chronic/serious health condition and prohibiting an employer from interfering with, restraining, or denying an employee the exercise of rights provided under the FMLA, and making it unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by the FMLA.

4. Jurisdiction is conferred upon this Court by 28 U.S.C. §1331 because this claim arises out of the laws of the United States. This Court also has jurisdiction pursuant to 29 U.S.C. §2617(a)(2).

5. Venue is properly laid in the Northern District of Ohio under 28 U.S.C §1391(b) because the claims alleged herein arose in Lucas County, Ohio.

**FACTUAL ALLEGATIONS**

6. Defendant was, at all times hereinafter mentioned, engaged in commerce or in an industry or activity affecting commerce and employed fifty (50) or more employees for each working day during each of twenty (20) or more calendar work weeks in the current or preceding calendar year and therefore is an employer as defined in 29 U.S.C. §2611(4).

7. At all times relevant herein, Curley was employed by Defendant for at least twelve (12) months and had at least one thousand two hundred fifty (1250) hours of service with Defendant and therefore was an "eligible employee" under the FMLA, as that term is defined in 29 U.S.C. §2611(2)(A).

8. Curley began his employment with Defendant on or about July 12, 1999, and Defendant promoted him to the rank of Sergeant in 2010, the same rank he holds today.

9. Throughout the course of his employment, Curley was qualified for the positions he held and performed his duties completely and competently.

10. In or around February of 2015, Defendant assigned Curley to the Drug Abuse Response Team ("DART") Unit.

11. The DART Unit is a multi-jurisdictional task force in which law enforcement agencies partner with social service agencies to reduce the many adverse consequences of the opiate addiction epidemic in Northwestern Ohio.

12. Beginning in February 2015, Curley served as Lucas County Sheriff's Office Commander in charge of the DART Unit, a role that made him a liaison among many agencies and service groups in Northwestern Ohio.

13. Because of his success in developing community partnerships, accurate information systems, and in securing available funding from different sources, by December 2015, Curley supervised eight (8) Lucas County Sheriff's Office employees who were assigned specifically to the DART Unit.

14. Curley dedicated his time and energy to increasing the success and reach of the DART program.

15. Curley was successful in his efforts and substantially increased the impact of DART.

16. Throughout his time in the DART Unit, Curley received nothing but positive feedback from his superiors.

17. On or about December 18, 2015, Curley informed Chief Deputy William Talbott ("Talbott") of his intention to take Family and Medical Leave Act ("FMLA") leave following the birth of his child.

18. Curley went on to explain to Talbott that his wife's physicians expected her to give birth before her due date at the end of January 2016.

19. Shortly after, on or about December 21, 2015, Curley had a second meeting with Talbott to discuss several concerns he had relative to the promotional process of the Sheriff's Office.

20. Curley explained:

   a. He discovered an officer who was eligible for promotion to sergeant had the questions and answers to the Sergeant's Exam;

   b. He believed the questions and answers were being circulated to other eligible, but not all, Sergeant candidates;

   c. He had contacted an attorney to discuss his concerns, rights and obligations with respect to reporting the information; and

   d. He had concerns about reporting the information to Defendant's Internal Affairs section.

21. On or about December 24, 2015, Talbott informed Curley that Defendant would not take any action with respect to the individual who had, and potentially circulated, the questions and answers to the Sergeant's Exam.

22. On or about December 28, 2015, Talbott removed Curley from the DART Unit.

23. Curley's child was born on December 31, 2015, and Curley exercised his right to and took six weeks of FMLA leave.

24. While Curley was on FMLA leave, Defendant assigned a Lieutenant to assume the role Curley had been filling with regard to the DART Unit, and at the same time, Defendant launched a public campaign to explain the now-successful DART Unit to the public.

25. Defendant never offered Curley advancement to Lieutenant while Curley was the Commanding Officer over the DART Unit.

26. Defendant gave several media interviews about the success of and need for the DART Unit while Curley was on FMLA leave, and Defendant did not mention or credit Curley with any of the DART Unit's success.

27. Upon his return from FMLA leave, on or about February 16, 2016, Defendant assigned Curley to work in a sub-basement office in an as-yet undeveloped program, now identified as the Body Camera Unit.

28. Defendant did not provide Curley any guidance as to how to structure or implement the new Body Camera Unit, which was, in fact, comprised only of Sgt. Curley.

29. Curley understood his job to be developing practices and policies relative to Defendant's newly instituted use of body cameras by certain Deputies, which practices and policies would be presented to Defendant's administrative management for review and/or approval.

30. In addition to starting the Body Camera Unit, Curley was assigned responsibility for the sex offender program, including tracking and communicating with persons required to register in Lucas County as sex offenders.

31. Curley was informed that Talbott made the statement that Talbott wanted Curley to "get re-acclimated to working" or words to that effect.

32. On or about April 5, 2016, Curley requested, and was subsequently approved for, FMLA leave to commence on April 11, 2016.

33. Following this request, Curley was informed that his duties were again going to be changed, including:

    a. he would no longer drive an unmarked car;

    b. he would assume shift supervision at Defendant's substation when the assigned day shift Sergeant was unexpectedly absent; and

    c. he would not be assigned any personnel to supervise except when filling in for the day shift Sergeant as needed.

34. Curley is the only Sergeant at Defendant whose regular work assignment is to supervise an operational section comprised of one person, himself.

35. Numerous employees who attained the rank of Sergeant after Curley became a Sergeant have been promoted to higher command positions, over which Defendant Sheriff has complete discretion for appointment.

## COUNT ONE
## Violation of FMLA
## 29 U.S.C. §§2601 et seq.

36. Curley realleges paragraphs one (1) through thirty-five (35) as if fully set forth verbatim below.

37. Defendant violated the provisions of 29 U.S.C. §§2601 et seq. including 29 U.S.C. §2615 by interfering with, restraining or denying Curley the exercise of rights provided under the FMLA and/or retaliating against Curley for asserting or otherwise exercising his rights under the FMLA.

38. As a direct and proximate result of Defendant's conduct, Curley has been damaged. Curley has suffered:

      a. Lost wages;

      b. Loss of pension benefits;

      c. Loss of insurance benefits;

      d. Loss of other fringe benefits;

      e. Loss of future earnings and front pay; and

      f. Time and money in endeavoring to protect himself from Defendant's violation of the FMLA, including costs and reasonable attorney's fees of this action.

**WHEREFORE**, Curley prays this Court award him as follows:

A. Such equitable relief as is proper as compensation for loss of future earnings, including relief in the form of front pay;

B. An amount to be determined at trial as compensation for lost pension, insurance and other fringe benefits;

C. Back pay from the date of trial with interest;

D. Liquidated damages;

E. Reasonable attorney's fees and the costs of this action; and

F. All such other and further relief as may be just and equitable.

                                                Respectfully submitted,

                                                *s/John D. Franklin*
                                                John D. Franklin
                                                Attorney for Plaintiff

**PLAINTIFF DEMANDS TRIAL BY JURY.**

                                                *s/ John D. Franklin*
                                                John D. Franklin